65 F.3d 176
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Darryl Scott TUNSTALL, Plaintiff-Appellant,
v.
John M. BECK, Defendant-Appellee.
 No. 94-17014.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 16, 1995.*
Decided Aug. 22, 1995.
 
 1
 Before: ALARCON, FERNANDEZ, and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 California state prisoner Darryl Tunstall brought a civil rights action against John Beck, a former corrections officer, alleging that (1) his eighth amendment rights were violated when Beck subdued him with excessive physical force after an argument; and, (2) his due process rights were violated when Beck filed false disciplinary charges which resulted in Tunstall's placement in segregation pending resolution of the charges. He appeals pro se the district court's grant of summary judgment on both claims. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm in part and reverse in part.
 
 
 4
 The incident giving rise to Tunstall's claims began when Tunstall argued with Beck after being told to use a different route out of the mess hall and Tunstall threw his coffee cup against the wall. Beck claimed that he felt threatened by Tunstall's response to his order, and that the force used was necessary because Tunstall grabbed him by the collar and assaulted him. Tunstall's affidavit disputes Beck's claims that Tunstall was threatening or that he grabbed and assaulted Beck. A corrections officer who witnessed the entire incident corroborated Tunstall's account. The officer reported that after Tunstall threw his coffee, Beck "grabbed Tunstall by the hair and rammed him into the wall to pat search him." According to the same witness, Tunstall then turned to face and question Beck, after which Beck "again grabbed inmate in the hair and smashed his face on the wall and attempted to put cuffs on him." The witness further stated that "at no time did inmate Tunstall appear to be threatening or did he even attempt to assault [Beck] or fight back."
 
 
 5
 Summary judgment was improper on Tunstall's eighth amendment claim. Tunstall produced sufficient evidence to raise a genuine issue of fact whether Beck's use of force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Contrary to the district court's conclusion, the fact that his injuries were slight does not necessarily defeat his eighth amendment claim. See Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimus uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.").
 
 
 6
 The district court properly granted summary judgment on Tunstall's due process claim, as he was deprived of no liberty interest when placed in administrative segregation pending resolution of disciplinary charges. The due process clause itself creates no liberty interest in remaining in the general population. See Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement ... are within the sentence imposed ... and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Likewise, California prison regulations do not create a liberty interest in remaining in the general population. See Sandin v. Conner, --- U.S. ----, 115 S.Ct. 2293, 2299-2300 (1995) (disavowing the practice of finding a liberty interest based upon prison regulations which limit prison official's discretion); Mujahid v. Meyer, --- F.3d ----, 1995 WL 399458 at * 1 (9th Cir. July 10, 1995) (noting that Sandin overrules cases which found a liberty interest in prison regulations which limit prison official's discretion).
 
 
 7
 Rather, in light of Sandin, Tunstall had a liberty interest in remaining in the general population only if placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S.Ct. at 2300 (citations omitted).[1] We conclude that Tunstall's confinement in administrative segregation does not impose such "atypical and significant hardship," notwithstanding the fact that Tunstall suffered a loss of general population privileges and benefits. See id. at 2301 (holding that inmate's "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.").
 
 
 8
 Finally, we agree with Beck that even construing Tunstall's complaint liberally, it contains no allegation that the disciplinary charges were filed in retaliation for Tunstall's comment about dirty food trays. We do not consider Tunstall's argument regarding this claim because it was raised for the first time in Tunstall's opposition to Beck's motion for summary judgment. See Stallcop v. Kaiser Foundation Hospitals, 820 F.2d 1044, 1050 n. 5 (9th Cir.) (declining to consider claim raised for the first time in opposition to motion for summary judgment, but never alleged in complaint), cert. denied, 484 U.S. 986 (1987).
 
 
 9
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED. Each party to bear its own costs.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the decision in Sandin was rendered after the district court's ruling in this case, the Supreme Court's decision applies retroactively to the instant case because the Court applied the rule announced in Sandin to the parties in that case. See Harper v. Virginia Dep't of Taxation, --- U.S. ----, 113 S.Ct. 2510, 2517 (1993) (no court may refuse to apply rule of federal law retroactively once the Supreme Court applies it to the parties before it)